UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MARK HURST,

    Plaintiff,

    v.       CAUSE NO. 3:22-CV-850-DRL-JEM

JOHN GALIPEAU *et al.*,

    Defendants.

OPINION AND ORDER

Mark Hurst, a prisoner without a lawyer, filed a complaint against Warden John Galipeau, Health Care Administrator Dorothy Livers, and Grievance Specialist Shannon Smith. ECF 1. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotations and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

The allegations in Mr. Hurst's complaint are somewhat vague. He alleges that he developed an open wound on his leg while incarcerated at Westville Correctional Facility, and the care he received for his condition was inadequate. Documents submitted with the complaint suggest he had an ulcer related to his diabetes. ECF 1-1 at 5, 10. Mr.

Hurst was concerned because the wound was bleeding, there was puss, and the dormitory where he resided was dirty.

The complaint alleges that Mr. Hurst filed a healthcare request but received no response. He filed a second healthcare request and still received no response. He then filed a grievance and wrote a request for interview to the warden indicating he was being denied urgent care. The complaint does not indicate when Mr. Hurst filed his first health care request regarding this condition, but he asserts he waited months for treatment. When he received treatment, he felt it was inadequate because the wound was seeping, the bandage would fall off, and medical staff were only seeing him to replace the bandage about every two weeks.

The earliest request regarding his leg ulcer that Mr. Hurst has included with his complaint is dated June 18, 2022. ECF 1 at 6. He was told to seek medical attention. He filed a request for health care on June 21, 2022. *Id.* at 8, 12. The response to the health care request isn't entirely legible, but it appears to indicate he should come back to wound care. Other documents submitted by Mr. Hurst suggest he was seen by medical staff the next day. *Id.* at 3. It appears that he received care for his condition prior to this too, on April 28, 2022, and May 16, 2022. *Id.* Mr. Hurst filed a request for interview directed to Health Care Administrator Livers on June 29, 2022. *Id.* at 5. In response, she indicated that he had been scheduled in urgent care. He filed a formal grievance on July 1, 2022, expressing his opinion that the wound dressing needed to be changed daily. *Id.* at 3. Records submitted with the complaint show his dressing was changed on July 4, 2022. *Id.* at 10, 11.

On August 24, 2022, he wrote to Dorothy Livers about his concern that his leg wouldn't heal in the dirty environment and his belief that he should be seen by medical staff more frequently. *Id.* at 9, 13. She responded the next day by indicating that Mr. Hurst was receiving daily care for his wound and would continue to do so until a provider directed otherwise. *Id.*

On August 24, 2022, Mr. Hurst also wrote a request for interview directed at Warden Galipeau regarding his care. *Id.* at 7. Mr. Hurst claimed the health care administrator and nurses were doing nothing for him. Warden Galipeau responded by indicating he just spoke with Mr. Hurst in urgent care.

In medical cases, the Constitution is violated only when a defendant is deliberately indifferent to an inmate's serious medical needs. *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). "[C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (quotations, brackets, and citation omitted). For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually

3

did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008).

That said, "the Constitution is not a medical code that mandates specific medical treatment." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). "Whether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interference, except in the most extreme situations." *Id.* Inmates are "not entitled to demand specific care [nor] entitled to the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). "[I]nexplicable delay in responding to an inmate's serious medical condition can reflect deliberate indifference," particularly where "that delay exacerbates an inmate's medical condition or unnecessarily prolongs suffering." *Goodloe v. Sood*, 947 F.3d 1026, 1031 (7th Cir. 2020) (citations and quotations omitted). "[W]hether the length of a delay is tolerable depends on the seriousness of the condition and the ease of providing treatment." *Petties v. Carter*, 836 F.3d 722, 730 (7th Cir. 2016).

Mr. Hurst directed a request for interview to Health Care Administrator Livers on June 29, 2022, and she responded by indicating that he had been scheduled in urgent care. ECF 2-2 at 5. Mr. Hurst also wrote to Health Care Administer Livers on August 24, 2022, and she responded by indicating that he was receiving daily care for his wound and would continue to do so until a provider directed otherwise. *Id.* at 9, 13. Though Mr. Hurst alleges that he wrote to Health Care Administrator Livers several times, these two communications are all that can be identified by the court. It can't be plausibly inferred from these communications that Health Care Administrator Livers' decisions regarding Mr. Hurst's care weren't based on her medical judgment or that she was deliberately

4

indifferent to his needs. Therefore, Mr. Hurst can't proceed against Health Care Administrator Livers.

Mr. Hurst has named Warden Galipeau as a defendant too. Someone from Mr. Hurst's family spoke with Warden Galipeau regarding his medical condition in June 2022. *Id.* at 5. The details of that communication aren't included in the complaint. Mr. Hurst alleges that he talked with Warden Galipeau several times and told him about the delayed, denied, and improper care. He, however, has provided details about only one communication with Warden Galipeau; the August 24, 2022, request for interview. And, at that point, Warden Galipeau knew Mr. Hurst was receiving care because he had just seen Mr. Hurst in urgent care. These facts do not permit an inference that Warden Galipeau was deliberately indifferent to Mr. Hurst's medical needs.

Mr. Hurst suggests that Warden Galipeau should be held liable because he's in charge and there is a pattern of delaying medical care. Supervisory staff can be held liable for a constitutional violation if they "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Doe v. Purdue Univ.*, 928 F.3d 652, 664 (7th Cir 2019). Here, Mr. Hurst hasn't established that his constitutional rights were violated or that a constitutional violation was facilitated, approved, or condoned by Warden Galipeau. "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 594-96 (7th Cir. 2009). Therefore, Mr. Hurst can't proceed against Warden Galipeau.

Mr. Hurst also named Shannon Smith as a defendant. He alleges that Ms. Smith erroneously instructed Mr. Hurst to mail a grievance appeal to the grievance manager in

5

the central office. Mr. Hurst, however, has no constitutional right to access the grievance process. *See Grieveson v. Anderson*, 538 F.3d 763, 770 (7th Cir. 2008) (noting that there is not a Fourteenth Amendment substantive due process right to an inmate grievance procedure). Therefore, he can't proceed against Shannon Smith.

This complaint doesn't state a claim for which relief can be granted. If he believes he can state a claim based on (and consistent with) the events described in this complaint, Mr. Hurst may file an amended complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file an amended complaint, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form, which is available from his law library. He needs to write the word "Amended" on the first page above the title "Prisoner Complaint" and send it to the court after he properly completes the form.

For these reasons, the court:

(1) GRANTS Mark Hurst until **October 11, 2023**, to file an amended complaint; and

(2) CAUTIONS Mark Hurst if he does not respond by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint does not state a claim for which relief can be granted.

SO ORDERED.

September 13, 2023         *s/ Damon R. Leichty*
                           Judge, United States District Court